1  BERNAL PETER OJEDA
2  Attorney at Law
   LAW OFFICES OF BERNAL PETER OJEDA
3  2945 Townsgate Road, Suite 200
4  The Westlake Park Place Office, POB 3664
5  Westlake Village, CA 91359-0664
   Tel: (888) 450-2501
6  Fax: (866) 569-1898
7  eMail: *bernalpojeda@appealworks.com*

8  *Counsel for Petitioners & Plaintiffs*

9
          **IN THE UNITED STATES DISTRICT COURT**
10         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12  Cesar  Jacobo  LUNA-FLORES;        No.  **'19CV0316 JM  BLM**
13  Jose  Antonio  Jacobo  LUNA-
    LOPEZ;  Maria  del  Carmen
14  FLORES-CASTILLO;  Melva  Eliu      **PETITION FOR WRIT OF**
    BRAVO-MORALES;  E. G. LUNA-        **HABEAS CORPUS; COMPLAINT**
15  BRAVO (a minor, by and through     **FOR DECLARATORY AND**
16  her  mother  and  Next  Friend,    **INJUNCTIVE RELIEF.**
    Melva    Eliu    Bravo-Morales);
17
    Rosario  LUNA-FLORES;  E.  E.      **IMMIGRATION ACTION**
18  LOPEZ-LUNA  and  C.  LOPEZ-
19  LUNA (minors, by and through
    their  mother  and  Next  Friend,
20  Rosario    Luna-Flores);    Alicia
21  LUNA-FLORES; Juan BAQUERA-
    SANTOYO; and M. S. BAQUERA-
22  LUNA (a minor, by and through
23  her  mother  and  Next  Friend,
24  Alicia Luna-Flores),

25
          *Petitioners-Plaintiffs*,
26
          v.
27

28

1

U.S. Department of Homeland Security ("DHS"); U.S. Citizenship and Immigration Services ("CIS"); U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); Executive Office for Immigration Review ("EOIR"); Kirstjen M. NIELSEN, in her official capacity as Secretary of DHS; L. Francis CISSNA, in his official capacity as Director of CIS; Ronald Donato VITIELLO, in his official capacity as Acting Director of ICE; Rodney C. SCOTT, in his official capacity as Chief Border Patrol Agent for CBP; Matthew WHITAKER, in his official capacity as Acting U.S. Attorney General; and James McHENRY, in his official capacity as Director of the Executive Office for Immigration Review ("EOIR"),

   *Respondents-Defendants,*

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

# **INTRODUCTION**

1.     On November 12, 2018, Petitioners[1]/Plaintiffs retained counsel for the purpose of representing them before the Respondents/Defendants— the United States Department of Homeland Security ("DHS") and its sub-agency components, the Citizenship and Immigration Services ("CIS"), the Immigration and Customs Enforcement ("ICE"), the Customs and Border Protection ("CBP"), including the Executive Office for Immigration Review ("EOIR") a sub-agency component of the United States Department of Justice ("DOJ") (which has supervisory authority over the Immigration Court in Arlington, Virginia) collectively, "Defendants".  At that time, the Plaintiffs established an attorney-client relationship with the undersigned counsel, which is protected by state and federal statutes as well as the First and Fifth Amendments to the State and Federal Constitutions as argued below.

2.     Written notice of the attorney-client relationship was first served upon the Defendants on November 12, 2018, the same day the attorney-client relationship was established. The Defendants acknowledged receipt of Plaintiffs' notices of representation on the same day, November 12, 2018. The written notices of representation named those Plaintiffs that were at that time (and still remain now) in the custody of ICE. They are identified as Cesar Jacobo Luna-Flores (also referred to as the "Principal Claimant") and his senior parents, Jose Antonio Jacobo Luna-Lopez and Maria del Carmen Flores-Castillo, collectively referred to as the "Plaintiffs in ICE Custody" or ("PIC"). The remaining Plaintiffs and family members are not in the custody

---

[1]     Henceforth, throughout this complaint, all references to the terms "Petitioners" and "Respondents" for purposes of consistency and uniformity are used interchangeably with the terms "Plaintiffs" and "Defendants."

3

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

of the ICE.

3. The Writ of Habeas Corpus is the proper mechanism to challenge unlawful detention in violation of the Constitution or laws or treaties of the United States. Although the Supreme Court in *Jennings v. Rodriguez*, 138 S. Ct. 830, 845 (2018) held that that Section 1225(b) of the Immigration and Nationality Act ("INA" or "Act") authorizes detention until the conclusion of removal proceedings without a bond hearing, the holding did not address the constitutionality of such detention, or where Section 1225(b) is not the applicable detention authority. Federal Constitution grants all "persons" in the United States (including foreign nationals irrespective of their citizenship status) the right to due process of law as well as the right to counsel of their choice as rights guaranteed by an originating from the Due Process Clause of the Fifth Amendment. This right is also guaranteed by statute, 8 U.S.C. § 1362. *Rios Berrios v. I.N.S.,* 776 F.2d 859, 863 (9th Cir. 1985) ("[D]ue process mandates that he is entitled to counsel of his own choice at his own expense under terms of the Immigration and Nationality Act ["INA" or "Act"]. Section 292 of the Act [8 U.S.C. § 1362]. . ." *Id.* 776 F.2d at 862. These separate statutory and constitutional rights are at the center of this civil action.

4. The Petitioners are a total of 11 asylum seekers and extended family members including seven (7) adults and four (4) minor children (appearing before the court by and through their respective Next Friends) collectively, "Plaintiffs". Plaintiffs are noncitizens and foreign nationals that presented themselves to the authorities of the San Ysidro Port of Entry ("SYS/POE") in November 2018. Once there, the Principal Claimant in the family (Plaintiff Cesar Jacobo Luna-Flores, A215 820 223) explained to the ICE and/or CBP authorities at the SYS/POE that he was a candidate for public office during the last 2018 Mayoral Elections in his hometown and the

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

target of an attempted assassination during a fatal ambush on a highway because he had formally contested the outcome of the elections tainted with fraud and violence. After the attempted assassination, Luna-Flores and his immediate and extended family members fled from his hometown and traveled to the international border seeking to apply for asylum for himself, his wife and daughter, his parents and three (3) sisters and their three (3) children as the Principal Claimant's immediate and extended family members.

5.     Through their agents and delegates at the SYS/POE, Defendants detained the Plaintiffs at first and then processed them as follows: eight (8) of them, including their 4 minor children were released from ICE custody on parole (with electronic ankle-bracelet monitoring devices) and were allowed to travel to their intended domiciles with family and friends in Moorpark, California. The remaining Plaintiffs (the PICs) were processed and taken into ICE custody at two (2) separate detention facilities within the local jurisdiction (Area of Responsibility or "AOR") of the San Diego ICE Field Office as follows—Cesar Jacobo Luna-Flores (the Principal Claimant) was housed at the San Luis Regional Detention Center ("SLRDC") while his parents—Luna-Lopez and Flores-Castillo were housed at the Otay Mesa Detention Center ("OMDC"), where they remain housed in that facility as of the date of this filing.

6.     Defendants are required to follow a 2009 nationwide ICE policy memorandum (attached as Addendum A) creating national standards for the government to follow when considering applications to parole asylum seekers in the same legal position as the PICs in this case. The memorandum instructs the Defendants that parole from detention should generally be granted absent the presence of overriding factors. Notwithstanding, Defendants have continued to detain the PICs and continued to refuse to

release them on parole without any finding that they present a flight risk or a danger to the community, nor have the Defendants given them a basic due process of a bond hearing before a neutral trier-of-facts where they could contest the unlawfulness of their continued detention. The failure to abide by the national standard of the 2009 detention memorandum and to provide them with a neutral fact-finder violates the Due Process Clause of the Fifth Amendment. PICs request that this Court orders their immediate release because their detention bears no reasonable relation to the any government purpose or facially legitimate and bona fide reason. Under due process principles, detention must "bear [a] reasonable relation to the purpose for which the individual [was] committed." *Id.* at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). *See also Ly v. Hanson*, 351 F.3d 263, 269 (6th Cir. 2003) ("[T]he time of [immigration] incarceration is limited by constitutional considerations, and must bear a reasonable relation to removal.").

7.     The Defendants' unlawful custody of Luna-Flores and their interference with the Plaintiffs existing attorney-client relationship with this counsel arises from the two (2) subsequent transfers of Luna-Flores *since* November 12, 2018, and from their arbitrary and capricious refusal to return him to the SLRDC. The first transfer involved a distance of 1,846 miles away to Tutwiler, Mississippi, on November 16, 2018. The next transfers several weeks later to Lumpkin, Georgia, involved a distance of 2,133 miles away from SLRDC. These transfers of PIC Luna-Flores are knowingly and intentional acts in plain violation of ICE's own "Detainee Transfer Policy 11021.1" (attached as <u>Addendum B</u>) issued on January 4, 2012 and still in effect now as will be shown below), which deprive the Plaintiffs of their constitutional right to due process of law, by impeding the effective representation of the Plaintiffs by this counsel and by preventing them from introducing the crucial testimony of the principal claimant in their asylum

6

applications in violation of law. Plaintiffs assert that absent an order granting injunctive relief, the Defendants' continuing arbitrary and capricious refusal in ignoring their duty to return PIC Luna-Flores to the San Diego ICE Field Office will continue to have predictable consequences involving severe irreparable detriment to the prejudice of their asylum cases as will be described further below, in violation of their due process rights under the Fifth Amendment to the Federal Constitution.

8.    One significant harm[2] resulting from the unlawful custody and intentional transfer of Luna-Flores (and the Defendants' arbitrary refusal to return him to the SLRDC or a detention center in the same AOR) is that in a typical family asylum case, there is a principal applicant or claimant that is the main "subject" or "target" of the persecutors—while the remaining family members are only "subjects" or "targets" solely by their family connection to the principal. In instances where the strength of the asylum claims of PICs Luna-Lopez and Flores-Castillo is inexorably tied to the strength of the claim of their son Luna-Flores, arbitrary and intentionally removing their son from the parents' cases adversely affects the parents' ability to establish their asylum claims on their own.[3] The continuing refusal to return Luna-Flores to SLRDC is not only against the Defendants' existing policy regarding transfers of detainees who have an existing attorney-client relationship but

[2] *Rios Berrios v. I.N.S.,* 776 F.2d 859, 863 (9th Cir. 1985)( finding that "The petitioner was in custody, spoke only Spanish . . .had been . . . [transferred] nearly 3,000 miles [away] from his only friend in this country" was a due process violation).

[3] See, Human Rights Watch, *A Costly Move: Far and Frequent Transfers Impede Hearings for Immigrant Detainees in the United States* ( June 2011), www.hrw.org/sites/default/files/reports/us0611webwcover.pdf demonstrating the harmful effects of transfers of individuals in ICE custody.

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

more offensively erodes the statutory rights to counsel and deprives the Plaintiffs' of their constitutional rights to equal protection under the law, as well as denies them their guarantees to due process of law. *See* INA, § 292, 8 U.S.C. § 1362, U.S. Const., amend. V. Another significant adverse consequence of the interference with the existing attorney-client relationship is the denial of the PIC's opportunity to offer their son's material testimony with respect to his past persecution experiences before the Immigration Judge in the San Diego local Immigration Court, where the parents' cases are being heard. After all, the only reason why Luna-Flores parents' have a claim of fear of persecution as circumstantial claimants is not because of anything these parents did or actions that they took to invite their persecution—but because they are the parents of Luna-Flores and the sole reason why the persecutors have persecuted them is to subjugate Luna-Flores on to doing what the persecutors want him to do—ceasing his challenges to the 2018 Mayoral Elections against the candidacy of their choice and to leave Mexico.

9.      Plaintiffs seek the following immediate preliminary injunctive orders: **(i)** an order entering a preliminary injunction directed to Defendant Vitiello to instruct the ICE Field Office for San Diego to forthwith return Cesar Luna-Flores to the SLRDC or any other detention center within its AOR; and **(ii)** an order entering a preliminary injunction directed to Defendant McHenry to instruct the Immigration Courts in San Diego, Los Angeles and Virginia that removal proceedings against the PICs Luna-Lopez and Flores-Castillo, and those against the remaining Plaintiffs, be stayed, or suspended, or continued without taking any action other than a continuance for a reasonable period sufficient in time for this Court to determine the permanent relief that may be proper and just in this case to prevent further egregious harm to the Plaintiffs. All other permanent injunctive reliefs

8

1  requested are indicated in the prayer for relief in this complaint.

2  ## JURISDICTION AND VENUE

3  10.    This case arises under the Fifth Amendment to the United
4  States Constitution, federal asylum statutes, and the Administrative
5  Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. This Court has subject matter
6  jurisdiction over the writ of habeas corpus and Plaintiffs' complaint for
7  injunctive and declaratory relief pursuant to Art. I, § 9, cl. 2 of the United
8  States Constitution (suspension clause); 28 U.S.C. § 2201 (declaratory); 28
9  U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question); 28 U.S.C.
10 § 1361 (mandamus); 5 U.S.C. §§ 702 (waiver of federal government's
11 sovereign immunity). This action also arises under the INA, 8 U.S.C. § 1101
12 et seq., and its implementing regulations.

13 11.    Venue is proper in the Southern District of California under 28
14 U.S.C. §§ 1391 because venue is proper in any district in which a defendant
15 resides and because a substantial part of the events or omissions giving rise
16 to the claims occurred in this district. Venue is *also* proper in this Court as to
17 PIC Luna-Flores under the pendent venue doctrine. *Saravia v. Sessions*, 280
18 F.Supp.3d 1168 (2017)("Once a court has determined that venue is proper as
19 to one claim [habeas, declaratory and injunctive relief for the remaining
20 PICs held in custody in this district], it may exercise pendent venue to
21 adjudicate closely related claims."); 28 U.S.C. § 1391(e)(1).

22 ## PARTIES

23 12.    Plaintiff Luna-Flores is a 42-year old national and citizen of
24 Mexico. This Plaintiff presented himself to the authorities at the SYS/POE"
25 accompanied by his mother (A215 223 174) and his father (A215 820 223).

26 13.    After several hours of detention and interrogation by the
27 Defendants' through their agents at the SYS/POE this Plaintiff was taken
28 into the custody of ICE and shortly thereafter was housed at a detention

9

facility awaiting further processing (the San Luis Regional Detention Center or "SLRDC" near the international border in San Luis, Arizona approximately 200 miles from SYSPOE.

14.    Plaintiff Luna-Lopez is a 66-year old national and citizen of Mexico. This Plaintiff presented himself to the federal authorities at the SYS/POE accompanied by his son (A215 820 223) and his wife (A215 820 174). After a 48-hour long detention and interrogation by the Defendants' agents at the SYS/POE, Mr. Luna-Lopez was taken into the custody of ICE and housed at the Otay Mesa Detention Center, at 7488 Calzada de la Fuente, San Diego, California, about 9 miles from SYSPOE.

15.    Plaintiff Flores-Castillo is a 54-year old national and citizen of Mexico. This Plaintiff presented herself to the federal authorities at the SYS/POE accompanied by her son (A215 820 228) and her husband (A215 820 223). After a long detention and interrogation by Defendants' agents at the SYS/POE, Ms. Flores-Castillo was taken into the custody of ICE and was also housed at the Otay Mesa Detention Center at 7488 Calzada de la Fuente, San Diego, California.

16.    Plaintiffs Melva Eliu Bravo Morales (A215 817 606) and her daughter E. G. Luna-Bravo (A215 817 607) are both nationals and citizens of Mexico and respectively, the wife and daughter of Plaintiff Luna-Flores, whom also presented themselves to the SYS/POE at the same time in November 2018. They were released on parole to their intended domiciles with family and friends in Moorpark, California.

17.    Plaintiff Rosario Luna-Flores (A215 920 208) and her minor sons E. E. Lopez-Luna (A215 920 209) and C. Lopez-Luna (A215 920 210) are nationals and citizens of Mexico and respectively, a sister of the Principal Claimant, PIC Luna-Flores, and his nephews. They were all released on parole to their intended domiciles with family and friends in Moorpark,

California.

18.    Plaintiff Alicia Luna-Flores (A205 248 974), her husband Juan Baquera-Santoyo (A205 248 975) and their minor daughter M. S. Baquera-Luna are all nationals and citizens of Mexico and respectively are a sister of the Principal Claimant, PIC Luna-Flores, his brother-in-law and his niece. They were all released on parole to their intended domiciles with family and friends in Moorpark, California.

19.    Defendant U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States.

20.    Defendant U.S. Immigration and Customs Enforcement ("ICE") is a sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detentions in the United States.

21.    Defendant U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens who are apprehended near the United States border or at an international arrivals airport.

22.    Defendant Executive Office for Immigration Review ("EOIR") is a sub-agency of the Department of Justice, and its primary responsibility is to adjudicate immigration cases in administrative removal proceedings.

23.    Defendant Kirstjen M. Nielsen is the Secretary of the DHS, the governmental department under which all of the immigration agencies operate, in particular here, ICE, and CBP. Accordingly, Secretary Nielsen has supervisory responsibility over ICE and CBP, and Plaintiffs sue the Secretary in her official capacity only.

24.    Defendant Ronald D. Vitiello is the Acting Director of ICE, the agency that has direct control and supervision over the custody of the Plaintiffs. As such, Defendant Vitiello is being sued by the Plaintiffs in his official capacity only.

25.     Defendant Rodney S. Scott is the Chief Patrol Agent for San Diego of the United States Customs and Border Protection, a sub-agency of the DHS and has direct oversight and responsibility over all eight Border Patrol stations within the San Diego sector. Plaintiffs sue Defendant Scott in his official capacity only.

26.     Defendant Matthew Whitaker is the Acting Attorney General of the United States and head of the United States Department of Justice ("DOJ"). In his capacity, Defendant Whitaker is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103. Plaintiffs sue Defendant Whitaker solely in his official capacity.

27.     Defendant James McHenry is the Director of the EOIR and his primary responsibility pursuant to 8 C.F.R. Part 1003.0(b)(1) is to oversee all of the administrative components of the sub-agency and is in charge of all immigration judges and the Board of Immigration Appeals, including the Arlington Virginia virtual Immigration Court. Defendant McHenry is being sued in his official capacity only.

## **FACTUAL ALLEGATIONS**

28.     On November 6, 2018, the Plaintiffs conjointly presented themselves to the authorities of the SYS/POE and conjointly as a family unit expressed their desire to apply for asylum in the United States and for the non-refoulment to their home country.

29.     At some point on that date Defendants transported Plaintiffs Luna-Lopez and Flores-Castillo approximately 9 miles from the SYS/POE to the Otay Mesa Detention Center ("OMDC") in San Diego, California. The Defendants today continue to house Plaintiffs Luna-Lopez and Flores-Castillo in the same detention center at OMDC.

30.     Also on November 6, 2018, the Defendants transported Plaintiff Luna-Flores from the SYS/POE to the SLRDC near the International Border

with Mexico in Arizona, albeit approximately 200 miles from the OMDC and the SYS/POE, but still under the jurisdiction of the same ICE district of San Diego.

31.   Noncitizens that are placed in ICE custody throughout the United States may be located via the internet by visiting the ICE webpage's ""Online Detainee Locator System" or "ODLS" and following the prompts ODLS eliciting either the "A" number (alien registration number) and country of birth, or the detainees full name, date of birth and country of birth. The ODLS then reveals the place of detention where the detainee is housed and provides the A number assigned to the detainee.

32.   The A number is an indispensable identification source for ICE, the CIS, the DHS and the EOIR and is mandatorily a prerequisite in all contact inquires by legal counsel when contacting any of the agencies to enable them to locate the detainee's file in all of the Defendants' computerized data systems.

33.   On November 12, 2018, Plaintiffs retained the legal services of this undersigned counsel and entered into a contract with his office to provide all legal services required to represent them in all matters involving their removal proceedings.

34.   On the same November 12, 2018 this counsel informed the Defendants in writing of his legal representation of the Plaintiffs, and provided their full names, dates of birth and country of birth to enable the Defendants to locate them. *See*, Group Exhibits A containing email notices addressed to SanDiego.Outreach@ice.dhs.gov entitled "*Need assistance in obtaining alien registration number of detainee at San Luis Regional Detention Center to file Notice of Appearance in Form G-28*" (dated November 12, 2018), and see same email notice addressed to Phoenix.Outreach@ice.dhs.gov. The Defendants acknowledged receipt of

Plaintiffs' notices. *See*, <u>Group Exhibits B</u> containing email responses from the San Diego ICE office at <u>SanDiego.Outreach@ice.dhs.gov</u> and from the <u>Phoenix.Outreach@ice.dhs.gov</u> as well as <u>NewOrleans.Outreach@ice.dhs.gov</u> addressed to this counsel's email at <u>bernalpojeda@appealworks.com</u>.

35.    The inquiry expressly requested from the Defendants the detainees' respective A numbers assigned to them because the ODLS (although is supposed to have published them) had no information on the A numbers missing for these detainees. Although the ODLS did locate their son, Plaintiff Luna-Flores, it also did not publish his A number. <u>Group Exhibits A</u>.

36.    Also on November 12, 2018 this counsel contacted the SLRDC published telephone number. During the conversation with the SLRDC attendant, he noted to this counsel that he could not find Plaintiff Luna-Flores in its facility although the attendant knew that on that same moment the ODLS reported him at that facility.

37.    After explaining that the ODLS published Plaintiff's location but did not publish the A number for this Plaintiff, the attendant stated that counsel should contact the ICE office having jurisdiction over the detainees in San Diego, California at (619) 557-6117. That number however is "no longer in service." *See*, <u>Group Exhibits A</u>.

38.    Despite all of the numerous letters and attached documents that this counsel has forwarded to the San Diego ICE Field Office since November 12, 2018, and despite its obligation to respond to this counsel's countless inquires under the federal regulations at 8 C.F.R. Part 292.5 et seq., as of today, the San Diego ICE Field Office has provided **zero** response.

39.    Having received no responses with the specific information requested from the ICE office in San Diego, the undersigned again contacted the Defendants telephonically on November 13, 2018 at the San Diego

14

Enforcement and Removal Operations. A voicemail responder asked for the caller to leave a detail message for someone to call back "as soon as possible" so said the message. No response has been received from that office by this counsel.

40.    The following day, November 14, 2018, having received no responses at all from the San Diego ICE office, this counsel again contacted that office in writing requesting a response and providing evidence of his earlier notices of representation of the Plaintiffs. <u>See</u>, Letter of Representation of November 14, 2018 attached to this complaint and marked <u>Group Exhibits A</u>.

41.    On or about November 16, 2018, the Defendants transferred Luna-Flores to a far distant detention center in Tutwiler, Mississippi, some 1,846 miles away from the detention facility at OMDC in San Diego, California. This transfer took place despite having had actual notice of the existing attorney-client relationship and without providing any notice of intent to transfer him out of the location where he was originally housed at SLRDC.

42.    On the same date, November 16, 2018, undersigned counsel served the Defendants with another letter requesting the Defendants to voluntarily return Luna-Flores to his original detention place from where he had been transferred out of SLRDC to Tutwiler, Mississippi without any regard to the existing attorney-client relationship. *See*, Letter of Counsel dated November 16, 2018 attached to this complaint and marked <u>Group Exhibits C</u>.

43.    On November 17, 2018, to this counsel's surprise, the Defendants through one of their delegates, Supervisory Detention and Deportation Officer ("DDO") Robert H. Deville, from the New Orleans Deportation and Removal Operations ("DRO") acknowledged the November

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

16, letter from this counsel and informed him that "these [factors] would be taken into consideration." Officer Deville also noted that Plaintiff's credible fear interview would be scheduled and conducted by the asylum office in Houston, Texas.

44.    On November 19, 2018, without waiving any argument that the transfer violated the existing attorney-client relationship, this counsel contacted in writing the Asylum Office Director for the Houston Asylum Office and stated the purpose of the contact was ". . .to arrange for a telephonic conference so that I may be present during my client's credible fear examination." Id. *See*, <u>Group Exhibits D</u>. Thereafter, Asylum Officer Sergio Bello of the Houston Asylum Office went ahead with scheduling the credible fear interview for November 26, 2018 **without** informing this counsel of the scheduled interview as had been specifically requested.

## **PROCEDURAL FRAMEWORK FOR ASYLUM SEEKERS**

### **A.    Credible Fear Findings.**

45.    H.R. Rep. No. 104-469, pt. 1, at 158 (1996)—reflects Congress' intent in enacting the a standard to determinate the credibility of the claims of asylum seekers at the border—"The credible fear standard is designed to weed out non-meritorious cases so that only applicants with a likelihood of success will proceed to the regular asylum process. If the alien meets this threshold, the alien is permitted to remain in the U.S. to receive a full adjudication of the asylum claim—the same as any other alien in the U.S." H.R. Rep. No. 104-469, pt. 1, at 158 (1996).

46.    Under the INA, asylum seekers at a port of entry must first demonstrate a credible fear of persecution in his or her home country during an interview with an asylum officer designed to elicit whether there is a "significant possibility" that the individual is eligible for asylum. 8 U.S.C. § 1225(b)(1)(B)(v). If an individual establishes a credible fear of persecution, he

or she is then entitled to a hearing before an immigration judge to adjudicate the asylum claim on the merits. *See id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). Asylum Officers of the CIS conducted individual examinations of each individual PIC and were each found to have demonstrated a credible fear of persecution if they are returned to their home country. Each PIC was subsequently referred to an immigration judge to decide their corresponding asylum claim on the merits.

### B.   Commencement of Removal Proceedings.

47.   In so doing, ICE placed each PIC in removal proceedings under section 240 of the Immigration and Nationality Act ("INA" or "Act") in two (2) different states (California and Georgia), before three (3) different Immigration Judges. PIC Luna-Lopez and his wife Flores-Castillo in turn were placed in removal proceedings before two (2) different Immigration Judges—PIC Luna-Lopez with the Hon., Olga Attia at the Otay Mesa Immigration Court while PIC Flores-Castillo with the Hon., Scott Simpson, both at the Otay Mesa Immigration Court (inside the OMDC). ICE placed their son, the Principal Claimant, PIC Luna-Flores in removal proceedings before the Hon., George J. Ward Jr., Immigration Judge for the Stewart Detention Center ("SDC") in Lumpkin, Georgia.

48.   The remaining eight (8) Plaintiffs in this action have all been placed in removal proceedings before various Immigration Judges in the Immigration Courts for the district of Los Angeles, California. Their claims against the Defendants is that by transferring the principal claimant in their family thousands of miles away from the immigration courts where their proceedings have been filed, the Defendants actions preclude them from establishing their claims for asylum through the testimony of the principal claimant, Luna-Flores, as elsewhere in this Complaint demonstrated.

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### C. Prima Facie Claims of Persecution.

49.     As referred to elsewhere in this action, Luna-Flores was a recent candidate for the 2018 Mayoral Elections in the Plaintiffs' hometown of Canada Morelos, Puebla, in Mexico. The elections took place on July 1, 2018. The facts are that immediately after the elections took place, when it appeared evident to those supporting the opposing party candidate that Plaintiff Luna-Flores may have been the likely winner, suspected persons linked to organize crime and mobsters supporting the opposition candidate destroyed the ballots in an arson. This action took place while the ballot boxes were in the possession and control of the Electoral Board Members that were entrusted with their care and were about to begin the official tally of the ballots. The burning of the ballots made their tallying impossible.

50.     A few days after the arson the Instituto Electoral del Estado (State Electoral Institute or "IEE") conducted an "alternative" talying of the scorched ballots by collaterally reviewing and collating the scrutiny records of the different political parties. The IEE thereafter in a surprise finding delivered the majority of tallied ballots to the opposing candidate, María de Lourdes Carrera Carrera thereby proclaiming her as the new Mayor for the city of Canada Morelos. Plaintiff Luna Flores disbelieving the accuracy of the IEE's accounting filed a formal complaint with the National Electoral Institute ("INE") the national authority overseeing all elections of candidates to office in Mexico. An investigation of the complaint of the arson-spoiled elections ensued thereafter.

51.     Prior to the scheduled day of the elections, Luna-Flores and his family members had received anonymous death threats intended to have him abandon his candidacy and leave Mexico or run the risk that he or any member of his family could be killed. After the elections, in or about July 30, 2018, while the winner of the 2018 Mayoral Elections was still being

challenged and debated by the INE, Luna-Flores became the target of an attempt on his life in an ambush while traveling on the Santa Isabel Highway, a two-way access road to and from Canada Morelos. Individuals wearing ski-masks over their faces and carrying powerful firearms shot and killed the occupants inside the vehicle that was just ahead of the one on which Plaintiff Luna-Flores was traveling. Luna-Flores and his passengers were able to escape uninjured by the grace of God when he swiftly made U-turn on the road and fled the scene before being noticed by the mobsters. All occupants inside the vehicle that was ambushed were killed as was later described on the news that same day.

52.    About three (3) months after the thwarted elections and the IEE claim, on October 14, 2018, the "*Tribunal Electoral Del Poder Judicial De La Federacion*" (Electoral Tribunal of the Federal Justice Department) held hearings, made findings that the arson of the ballots boxes had rendered the ballots a total loss, annulled the 2018 Mayoral Elections and ordered that new Mayoral Elections for 2018 be conducted. Two weeks later, on October 31, 2018, a new controversy around the annulment of the elections arose when a state agency overseeing this state elections made contrary findings and held that the alternative tallying of the ballots offered by the opposing candidate, Maria Lourdes Carrera-Carrera, demonstrated that the opposing candidate had in fact received more votes in her favor and that she had won the elections. At that point, because Plaintiff Luna-Flores had already received death threats to leave or be killed and because he became the victim of an attempted assassination ambush, he decided to protect himself and his family and all fled to the United States by presenting themselves to the SYS/POE seeking asylum and non-refoulment for him and his immediate and extended family members.

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

**D.    Persecution Based on Family Ties to Targeted Claimant.**

53.    Immigration Judges and asylum law in general treat these extended family members[4] as consequential asylum claimants based exclusively on their family ties with the principal target of the persecutor. E.g., *Mashiri v. Ashcroft,* 383 F.3d 1120-21 (9th Cir. 2004) (stating that death threats, violence against family, vandalism of residence, threat of mob violence constituted a qualified grounds for relief); *Navas v. INS,* 217 F.3d 646, 659 n.18 (9th Cir. 2000) ("[W]hen evidence regarding a family history of persecution is considered, the relationship that exists between the persecution of family members and the circumstances of the applicant must be examined.").

54.    Plaintiff Luna-Flores is the principal claimant in the collective asylum claims of each of his immediate and extended family members. Luna-Flores alone was the target of persecution as was his attempted killing during the traffic ambush. It is organized crime that is believed to be behind Luna-Flores's death threats and his attempted killing. It is *thus* indisputable that Luna-Flores is a material witness of the remaining claims for relief for all of his extended family members as he alone holds the crucial testimony of his attempted killing in the traffic ambush, and the preceding death threats made against him and his family, the inner circumstances and personal experiences that he alone personally lived through the period of time in question during the 2018 Mayoral Elections. As such, the personal testimony of Luna-Flores is the best evidence the remaining family members have in

---

[4]  Not to be conflated with the provisions in immigration law that apply to asylee benefits authorized to qualified family members solely as a derivative beneficiary of the principal claimant, and are only characterized as derivative or dependent beneficiaries of the principal's application for asylum relief regarding their ability to draw benefits to themselves as a result of their qualified relationship to the principal applicant.  xxxxx

support of their asylum claims. Having separated the Plaintiffs as they have after Defendants had notice of the established attorney-clients relationship constitutes an arbitrary and prejudicial unlawful interference that violates their collective due process rights under the Fifth Amendment.

### E.   Defendants' Pattern of Misconduct as Unbecoming.

55.   Despite repeated requests made by the Plaintiffs for the return of Luna-Flores to California, the Defendants have yet to respond and continue to refuse to return Luna-Flores to the location where he was at the time of the unlawful transfer and prejudicial interference. *See Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1439 (9th Cir.), amended, 807 F.2d 769 (9th Cir. 1986) ("Bocanegra-Leos [the noncitizen] was at all times represented by counsel prior to the transfer to El Centro, California [600 miles away]. Thus, the transfer order interfered with an existing attorney-client relationship."). The transfer of Plaintiff Luna-Flores in this case by far surpasses the long distance referenced in the referenced Ninth Circuit case above.

56.   While the federal government has unfettered discretion on where to house detainees as well as to when and where to transfer them, as it should be, this discretion is counterbalanced by the protection limitations embodied in the Due Process Clause. Where, as here, the transferring of the principal claimant 2,133 miles away from the remaining Plaintiffs is directly traceable to the interference of an on-going attorney-client relationship and where it results in a substantially diminishing capacity to sustain the remaining Plaintiffs' claims for asylum relief, and where it interferes with the remaining Plaintiffs' ability to present their claims for relief, due process requires that the prejudicial effects of the transfer be prevented or estopped. *Orantes–Hernandez v. Thornburgh,* 919 F.2d 549 (9th Cir. 19990) quoting

*Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1500 at ¶ 46[5] (9th Cir. 1988) (referencing its "findings of facts and conclusions of law"); *see* also Immigration and Nationality Act ("INA") § 292, 8 U.S.C. § 1362; 8 C.F.R. Part 292.5 et seq., to be considered in conjunction with the referenced seminal case involving the same or similar interference by these same Defendants.

### F.   Defendants' Failures to Follow Their Own Policies.

57.   On January 4, 2012, John Morton, then Director for the United States ICE published a "Detainee Transfers" memorandum designed to establish a nationwide policy on the transfers of detained aliens (noncitizens). According to its published terms, DHS is to inform the detained individual "immediately prior to transfer" and to provide notice within 24 hours of the transfer to an individual's representative, if any. *See* ICE, Policy 11022.1: Detainees Transfers § 5.3 (Jan. 4, 2012), www.ice.gov/doclib/detention-reform/pdf/hd-detainee-transfers.pdf (directing that ICE inform the representative of the transfer "as soon as practicable on the day of the transfer, but in no circumstances later than twenty four (24) hours after the transfer occurs") [hereinafter "ICE Transfer Policy"].

58.   According to its various terms, the published policy aims at limiting the transfer of detainees to only those situations listed therein that are deemed "necessary" by a Field Office Director ("FOD"). The ICE Transfer

---

[5]   Finding that the "transfer policy" of the legacy INS "and the extent to which it prejudices detainees and interferes with their constitutional and statutory rights to effective assistance of counsel. The deprivation of those rights entitles plaintiffs to injunctive relief which will militate against the pernicious effects of this policy." *See* also, ¶ 48 (stating: "Transfer of detainees who are represented by counsel interferes with the attorney-client relationship. *Id*; (*Chavez–Galen v. INS,* No. 80–485T (W. D. Wash. 2/3/87); Although INS purports to have a policy of not transferring aliens who are represented by counsel, the evidence showed otherwise.")

Policy imposes a duty on ICE Supervisory Immigration Officer(s) to **not** transfer detainees when there is documentation to support among others, **any** of the following:

> (a) immediate **family** members (described as including mothers, fathers, step-parents, foster parents, brothers, sisters, stepbrothers, stepsisters, biological and adopted children, stepchildren, foster children, and spouses, including common law marriage or civil unions, and cohabitating domestic partnerships legally recognized by state or other entity" **within the Area of Responsibility** ("**AOR**").

> (b) an **attorney of record** on file **within the AOR**.

59.    The transfer of Luna-Flores out of the AOR in question is directly contrary to the referenced paragraphs in ICE Transfer Policy above referenced. Moreover, paragraph 5.2(3) (details examples of exceptions to the general policy of delimiting transfers for instances such as: medical or mental health reasons, based on detainee request, "[f]or the safety and security of the detainee, other detainees, detention personnel or any ICE employee," for the agency's convenience when the venue of detention is different than the immigration court venue, due to termination of facility use, to prevent overcrowding, and "[t]o transfer to a more appropriate detention facility based on the detainee's individual circumstances and risk factors"). See ICE Transfer Policy attached hereto as an Exhibit. In fact, ICE publishes the ICE Enforcement and Removal Operations("ERO"), National Detainee Handbook (April 2016) which supports a detainees ability to request a voluntary transfer to another facility for outdoor recreational purposes, by merely asking an ICE Officer after meeting a certain period of continuous detention in a facility that has no outdoor recreation. *See*, https://www.ice.gov/sites/default/files/documents/Document/2017/detainee-handbook.PDF.

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

60.     Likewise, under immigration law, an arriving alien subject to expedited removal who requests asylum at a port of entry to the United States is entitled to an interview with an asylum officer, where the individual must demonstrate a "credible fear of persecution or torture" in his or her home country. Individuals that established a credible fear are entitled to a hearing before an immigration judge to adjudicate the asylum claim on the merits.  INA § 235(b)(1)(B)(v). Because it typically takes several months before an asylum seeker will receive a final decision on his or her asylum claim, particularly if the applicant files an appeal to the Board of Immigration Appeals ("BIA") or a federal court of appeals, the ICE published a memorandum describing its policy with regards to the release of these individuals from detention centers.

61.     On December 8, 2009, John Morton, *then* Assistant Secretary for ICE issued a memorandum known as "*Parole of Arriving Aliens Found to Have a Credible Fear of Persecution and Torture*" (commonly referred to as the "Parole Directive") now in full force and effect. The Parole Directive provides that, absent exceptional overriding factors, an asylum seeker who has established a credible fear of persecution should be granted parole in the "public interest" and released from detention[6] while pursuing his or her asylum claims if the individual (a) establishes his or her identity to the satisfaction of DHS; and (b) presents neither a flight risk nor danger to the

---

[6] *See, e.g.*, Mark Noferi, *A Humane Approach Can Work: The Effectiveness of Alternatives to Detention for Asylum Seekers*, at 1, 3 (July 2015), https://www.americanimmigrationcouncil.org/sites/default/files/research/a_h umane_approach_can_work_the_effectiveness_of_alternatives_to_detention_ for_asylum_seekers.pdf, (summarizing research showing that asylum seekers are predisposed to comply with legal processes).

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

community. Parole Directive ¶ 6.2.

62.    In July 20018, the United States District Court for the District of Columbia issued an order in *Damus v. Nielsen*, No. 18–578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018), a class action law suit that challenged the DHS policy of detaining asylum seekers without considering their suitability for release on parole. The court certified a class of arriving asylum seekers found to have shown a credible fear of persecution who were detained by DHS after they were denied parole under the ICE Parole Directive referenced above. The court entered a preliminary injunction after finding that the various ICE Field Offices involved as defendants in the case had failed to follow the ICE Parole Directive among other things prohibiting the ICE Field Offices from detaining such asylum-seekers absent an individualized determination that they present a flight risk or pose a danger to the community.

63.    The court also prohibited the defendant from denying parole based on categorical criteria applicable to the class members in question. Although the *Damus* injunction applies only to the ICE Field Offices named as defendants in that action, *Damus* represent a persuasive authority that the ICE Parole Directive is binding on these Defendants as well. The defendants in *Damus* are obligated to follow the substantive and procedural requirements of the ICE Parole Directive in all similar cases. Indeed, other district courts dealing with the same issue have reached the same conclusion as the district court in *Damus*. *See*, *Abdi v. Duke*, 280 F. Supp. 3d 373 (W.D.N.Y. 2017) (preliminary injunction requiring that DHS follow the Parole Directive in the ICE Buffalo Field Office); *Aracely R. v. Nielsen*, No.: 17-1976, 2018 WL 3243977 (D.D.C. July 3, 2018) (same, for individual asylum seekers detained in Texas).

64.    Notwithstanding the existing policy of the ICE Parole Directive,

the Defendants have blatantly refused to parole Luna-Flores in violation of the APA, the INA and the U.S. Constitution. As a result of Defendants' unjustified violations of the (1) ICE Parole Directive and the (2) ICE Transfer Policy, the Defendants are subjugating the PICs' to substantially diminishing their ability to pursue a fair opportunity to apply for asylum which the Congress of the United States extended to all individuals in the same predicament as are these Plaintiffs.

65.    This case also involves separate claims against the Defendants through their various named and unnamed delegates for knowingly, wantonly and continuously ignoring without any legal cause—countless written inquiries made by the Plaintiffs' counsel, seeking information deemed indispensable for the prompt and effective representation of the Plaintiffs, beginning with the Defemdants' southern border named delegates in San Diego and Arizona, continuing through those in Mississippi and Louisiana and now ending in Georgia. Each of the delegate officers and offices of the above-named Defendants owes timely responses to the repeated inquiries to the Plaintiffs' legal counsel to the extent that their failure to provide any responses whatsoever has caused and continuous to cause severe prejudice to each and all of the Plaintiffs.

**INJUNCTIVE AND DECLARATORY RELIEF ALLEGATIONS**

66.    Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as though fully set forth herein.

67.    An actual and substantial controversy exists between Plaintiffs and Respondents regarding their respective statutory and constitutional rights and duties under the stated circumstances.

68.    Plaintiffs contend that the Defendants owe a statutory duty under the INA, see § 292, 8 U.S.C. § 1362 as well as a constitutional duty under the Due Process Clause of the Fifth Amendment to respond to the

Plaintiffs repeated inquiries in a timely manner. This duty is evident by the Defendants' own promulgated rules, which in part are described in 8 C.F.R. Parts 292.5(a) and (b).

69.     Plaintiffs further contend that the Defendants owe a due process duty to the Plaintiffs of not interfering with their existing attorney-client relationship by despite possessing knowledge of the asserted relationship— transferring the Plaintiff notwithstanding, thousands of miles away from where the noncitizen was at the time of the creation and assertion of the attorney-client relationship, to the extent that renders the effectiveness of the legal representation a violation of the right to due process of law under the Fifth Amendment.

70.     Plaintiffs also assert that the Defendants owe a due process duty to the Plaintiffs of refraining from taking affirmative actions that—under the stated circumstances—have the effect of directly obstructing and restricting their free access to their retained counsel of their choice in their removal proceedings to their prejudice and unfair detriment in violation of their right to due process of law under the Fifth Amendment.

71.     Plaintiffs further contend that in view of the Defendants' actions and omissions, in part, in transferring Luna-Flores 2,133 miles from this jurisdiction the Defendants have in fact adversely impacted on each of the Plaintiffs chances to establish their respective claims for relief because it is Luna-Flores who is at the center of their factual claims as the principal claimant whose life has been threatened as a result of his own actions, who was almost killed in an attempt to murder him and escaped with his life by chance, and whom has been the center of the persecution to whom his family and him have been subjected.

72.     Plaintiffs assert that by transferring their son out of the geographical jurisdiction of the immigration court in San Diego, the

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Defendants have inevitably had the effect of impacting their ability to present his own testimony involving the attempted murder against him, the death threats that were personally made to Luna-Flores, and their ability to have their applications for relief adjudicated in a fair and meaningful manner, all of which have deprived these Plaintiffs of their procedural Due Process guarantees under the Fifth Amendment of the Federal Constitution.

73.     The conduct of these Defendants as alleged in this complaint has caused the Plaintiffs irreparable harm, which absent an injunctive relief order will continue to cause these Plaintiffs irreparable harm by denying them of their constitutional rights' without due process of law.

74.     Under the APA, a "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. This Court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in the accordance with law." 5 U.S.C. § 706.

75.     There is no adequate remedy at law for the continuing violations by Defendants of the Plaintiffs' constitutional and statutory rights as described in this complaint.

## FIRST CLAIM FOR RELIEF

### Immigration and Nationality Act and Implementing Regulations

(As Against All Defendants)

76.     Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as though fully set forth herein.

77.     By their terms, INA § 292, 8 U.S.C. § 1362, and the federal regulations at 8 C.F.R., Parts 292 et seq., and 1240.3, promulgated to implement the constitutional and statutory right to counsel of their own choice at their own expense, serve to guard the type of interference that has

taken place in this case and to impede the federal government from interfering with that stated statutory and constitutional right to counsel.

78.   Because of the Defendants' actions and omissions as alleged in this Complaint, the Plaintiffs have been denied their statutory and procedural due process rights as plead herein; Plaintiffs have suffered and continue to suffer injury in the form of an unreasonable interference with reasonable access to their counsel of choice given the enormous distance from this counsel's office in California to where the Luna-Flores has been housed 2,636 miles away.

79.   And because the Defendants' actions in unfairly interfering as alleged herein and in failing to correct their conduct after requests to ensure that there is a fundamentally fair process in which Plaintiffs can apply for relief from removal, unless enjoined, these Defendants will continue to violate Plaintiffs statutory and procedural due process rights to be meaningfully heard under the Fifth Amendment.

## SECOND CLAIM FOR RELIEF

### Deprivation of Property and Liberty Interest Without Procedural Due Process; Fifth Amendment to the U.S. Constitution, 5 U.S.C. §§ 702, 706.

(By All Plaintiffs Against All Defendants)

80.   Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as though fully set forth herein.

81.   The Fifth Amendment to the U.S. Constitution protects all persons from deprivation of liberty and property without due process of law.

82.   Plaintiffs have a property interest in free exercise of their procedural evidentiary rights in removal proceedings. These rights are protected not only by statute and federal regulations but also protected under the procedural Due Process Clause of the Fifth Amendment—the right

29

to present evidence in support of their applications for relief—which is being curtailed by removing their son 2,636 miles away to a different ICE AOR and 2,699 miles away to a different Immigration Court, in Arlington, Virginia thereby preventing all remaining family member Plaintiffs from the ability to present the Principal Claimant's testimony to support their conjoint applications for asylum relief.

83.   The APA, enacted in part to protect individual rights in our Democracy more than half century ago provides the judiciary with authority to (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

84.   PICs Luna-Lopez and his wife Flores-Castillo have a property and liberty interest in the proper adjudication of their applications for asylum in removal proceedings. These rights are guaranteed and protected by statute (8 U.S.C. § 1229a(b)(4) ("[T]he alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf. . .")) by Part 1240.8(d) ("The respondent shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion.") and by the procedural due process clause of the Fifth Amendment.

85.   The filing of removal proceedings before the Otay Mesa

30

Immigration Courts against the PICs Luna-Lopez and Flores-Castillo, and in the Los Angeles Immigration Courts against the remaining Plaintiffs, while concurrently filing removal proceedings against the Principal Claimant and PIC Luna-Flores in the Immigration Court in Arlington, Virginia, 2,699 miles away, their respective applications for asylum relief for Luna-Flores's parents and for the remaining Plaintiffs, who have no meaningful education and are unable to articulate in their own language of Spanish, let along in the English language, the asserted claims of the Principal Claimant because those are the experiences lived solely and primarily by the Principal Claimant himself, will have a severe adverse impact on their ability to established  eligibility and entitlement to asylum relief where they will be deprived of the opportunity to present the testimony of the key witness and central focus of the oppression and persecution at issue, Luna-Flores.

86.     Defendants Nielsen, Cissna, Vitiello, Scott, Whitaker, and McHenry, have all conjointly in their official capacities deprived these Plaintiffs of their rights as fully demonstrated in this Complaint.

87.     By their actions and omissions, Defedants have violated, and unless enjoined, will continue to violate, Plaintiffs' procedural due process under the Fifth Amendment.

## THIRD CLAIM FOR RELIEF

### Interference with Right to Counsel

### First and Fifth Amendments to the U.S. Constitution, 5 U.S.C. §§ 702, 706, INA (8 U.S.C. §§ 1362, 1229a)

(By All Plaintiffs Against All Defendants)

88.     Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as though fully set forth herein.

89.     The Due Process Clause of the Fifth Amendment guarantees noncitizen respondents in removal proceedings the right to representation by

31

counsel of their choice at no expense to the government.

90.   Civil litigants and applicants for government benefits have a First Amendment right to be represented by counsel of their choice free from unreasonable interference with the attorney-client relationship.

91.   Plaintiffs Luna-Lopez and his wife Flores-Castillo have a statutory right to representation by counsel, at no expense to the government under the INA, § 292, and 8 U.S.C. §§ 1362, and have a right and obligation to present evidence in support of their claims for relief in removal proceedings under INA § 1229a(b)(4)(A).

92.   Defendants have a statutory and constitutional obligation to not stand in the way of these Plaintiffs unabridged right and access to legal representation to the greatest extent practicable under the INA, § 292, and 8 U.S.C. §§ 1362, 1229a(b)(4)(A) when doing is clearly unjustified.  ICE

93.   By their conduct as alleged in this Complaint, Defendants have interfered with, and unless enjoined, will continue to interfere with and deny these Plaintiffs' right to access to counsel, and significantly diminished their ability to present evidence in support of their claims for asylum, all of which is in violation of the statutes the Defendants administer, and deprive these Plaintiffs of their constitutional and statutory rights without any justification for doing so.

## FOURTH CLAIM FOR RELIEF

**Interference with Constitutional Rights to Access the Courts and Petition the Government. First and Fifth Amendments to the U.S. Constitution, 5 U.S.C. §§ 702, 706**

(By All Plaintiffs Against All Defendants)

94.   Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as though fully set forth herein.

95.   The First Amendment right to petition the government includes

the right to file civil actions in court or defend against civil actions in court that have a reasonable basis in law or fact and to seek government benefits and services, including immigration benefits and protection, from government agencies.

96.    The Fifth Amendment right to due process also includes the right to access the courts and government benefits without undue government interference.

97.    The deliberate ignoring of Luna-Flores's requests to be returned to the same ICE Field Office and AOR in San Diego, and the complete absence of any real existent single administrative forum in which to request and to petition the government for immediate redress, infringes and interferes with their due process rights under the law. Plaintiffs' rights to access and petition the government are being deprived. These rights are critical to their ability to establish entitlement to immigration benefits and protections to prevent their removal to a country where they will show there is a greater than 10% chance they will be persecuted, and more likely than not that they will be tortured and even killed, as these rights are guaranteed by statute and the Due Process Clause of the Fifth Amendment to the Federal Constitution.

98.    Defendants Nielsen, Cissna, Vitiello, Scott, and Whitaker have deliberately failed to take any reasonable affirmative actions to ensure that the rights of these Plaintiffs will cease to be continuingly infringed upon without justification and absent issuance of a preliminary injunction order these Defendants will continue to interfere with the Plaintiffs rights in the manner as referenced in this Complaint.

99.    Defendant McHenry on the other hand is without suitable authority to intervene or order the remaining Defendants to cease and desist with the continuing violation of the Plaintiffs' rights as demonstrated in this

Complaint. McHenry has no independent authority to order that the removal proceedings against any of the Plaintiffs be suspended temporarily without the acquiescence of the remaining Defendants. McHenry is also without authority to order that the removal proceedings instituted against one or more of the Plaintiffs in one immigration court be transferred to another immigration court, without the express acquiescence of the remaining Defendants.

100.   On the other hand, Defendant McHenry has the supervisory authority over the immigration courts in Virginia, San Diego and Los Angeles in which to bring these immigration courts into compliance with a preliminary injunction order to suspend, or withhold further proceedings in the respective immigration courts against all of the Plaintiffs, until the issue of the return of PIC Luna-Flores to the ICE Field Office in San Diego.

101.   The Defendants as alleged in this Complaint have deliberately abandoned their obligation to correct the wrong doing and to return to the proper jurisdiction Luna-Flores to exercise thee statutory and constitutional right to have access to the courts by and through their counsel of their choice and to petition the government as well as to be heard in their petitions in a fear, humane and meaningful manner.

102.   Through the described conduct and omissions, the Defendants have violated and, unless enjoined, will continue to violate the Plaintiffs of their rights to access the courts and to apply for government benefits and to the petition the government under the First and Fifth Amendments to the United States Constitution.

## FIFTH CLAIM FOR RELIEF

**Unlawful Conduct Unjustified for Failure to Follow or Rescind the ICE Transfer Policy. 5 U.S.C. §§ 702, 706**

(By All Plaintiffs Against All Defendants)

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

103.  Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as though fully set forth herein.

104.  Defendants transferred PIC Luna-Flores thousands of miles away from the AOR of the ICE Field Office in San Diego, where he was housed before the interference with the Plaintiffs' attorney-client relationship.

105.  Defendants have not rescinded their own ICE Parole Directive while also representing that it remains in full force and effect, rendering their conduct of ignoring or failing to follow the Directive as unjustifiably unlawful.

106.  After Plaintiffs requested the Defendants to return PIC Luna-Flores to the AOR of the ICE Field Office in San Diego, the Defendants have continued to ignore the request.

107.  Defendants' actions are arbitrary and capricious and contrary to law, in violation of the APA. *See* 5 U.S.C. § 706(2).

## <u>SIXTH CLAIM FOR RELIEF</u>

**Unlawful Conduct Unjustified for Failure to Follow or Rescind the ICE Parole Directive. 5 U.S.C. §§ 702, 706**

(By All Plaintiffs Against All Defendants)

108.  Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as though fully set forth herein.

109.  Defendants continue to detain Luna-Flores 2,133 miles away from the AOR of the ICE Field Office in San Diego where he was housed at the time of the unlawful interference with the Plaintiffs attorney-client relationship.

110  After Luna-Flores requested to be paroled under the ICE Parole Directive and presented evidence in support of his parole, the Defendants denied PIC Luna-Flores his request by willfully ignoring without

justification their obligation to follow the ICE Parole Directive.

111.   Defendants' actions are arbitrary and capricious and contrary to law, in violation of the APA. *See* 5 U.S.C. § 706(2).

## SEVENTH CLAIM FOR RELIEF

### Count One – By The PICs Against All Defendants

### (Due Process—Right to Release)

112.   Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as though fully set forth herein.

113.   The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides in part that "[n]o person . . . be deprived of life, liberty, or property, without due process of law."

114.   The PICs should be released because their continued detention under the stated circumstances is not reasonably related to any government purpose and violates the Due Process Clause of the Fifth Amendment.

### Count Two– By The PICs Against All Defendants

### (Due Process—Right to Bond Hearing)

115.   Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as though fully set forth herein.

116.   The Defendants are required by the Due Process Clause to show proper justification for continuing to detain the three (3) specific PICs in an individualized hearing before a neutral fact-finder. The government must show by clear and convincing evidence that continued detention is justified based on evidence that shows they are a flight risk and/or danger to the community.

117.   Continuing detention without a hearing before a neutral fact-finder of these PICs violates their due process. This Court thus should order that they be given a bond hearing where the Defendants bear the burden of showing by clear and convincing evidence that their continued detention is

necessary to ensure they are not a flight risk or a danger to the community.

## Count Three– By The PICs Against All Defendants
## (Due Process—Right to Bond Hearing)

118.   Plaintiffs repeat and reallege the allegations contained in all preceding paragraphs as though fully set forth herein.

119.   Under the nationwide standard for the parole of similarly situated noncitizens, as well as constitutional due process, the PICs should be released because the denial of their parole requests does not abide by the Parole Directive standard.

120.   Moreover, the denial of their parole requests without any factual basis or individualized facially legitimate and bona fide reason for their denials violated the Fifth Amendment's principles of due process and equal protection of the laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.   Issue a preliminary injunction ordering the Defendants to immediately return PIC Luna-Flores to SLRDC or any another detention facility which falls under the jurisdiction of the San Diego ICE Field Office AOR.

2.   Issue a Writ of Habeas Corpus; order the Luna-Flores be returned to the AOR for the ICE Field Office in San Diego, with appropriate conditions of supervision or electronic monitoring devices if necessary on the grounds that Defendants have not shown their detention is reasonably related to any government purpose and the government has not shown a factual basis or facially legitimate and bona fide reason for transferring him as shown to a far distant detention center; in the alternative, issue an order to show cause requiring Defendants to show, within 21 days or a reasonable

period the Court deems proper, why the writ should not issue;

3.     Issue a declaration that Defendants by their pattern of conduct as asserted in this Complaint have interfered with the Plaintiffs' statutory and constitutional rights to counsel of their choice and by that same conduct have infringed and interfered with the Plaintiffs' existing attorney-client relationship, in violation of their rights under the First and Fifth Amendments to the United States Constitution and the INA with his right to access the courts and petition the government, as well as, with their right to be meaningfully heard;

4.     A declaration that Defendants' failure to abide by their own internal policies are arbitrary and capricious and contrary to law in violation of the APA (5 U.S.C. § 706(2)), and the Defendants' continuing to infringe and interfere without justification with the Plaintiffs' statutory and constitutional rights to be meaningfully heard on the merits of their applications for asylum and related protections afforded by Congress to persons in the same situation, violates the Plaintiffs right to equal protection of the law;

5.     A preliminary injunction ordering the Defendant McHenry to instruct the immigration courts in San Diego, Los Angeles and Virginia that removal proceedings against the PICs Luna-Lopez and Flores-Castillo, and those against the remaining Plaintiffs, be stayed, or suspended, or continued without taking any action other than a continuance for a reasonable period sufficient in time for this Court to determine the permanent relief that may be proper and just in this case to prevent further egregious harm to the Plaintiffs;

6.     An injunctive order instructing the Defendants to reconsider and/or reassess the Plaintiffs' individual and collective requests for parole which are to abide by the four squares of the ICE Parole Directive Policy;

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

7.    Attorneys' fees under the Equal Access to Justice Act, and costs; and

8.    For such other and further or modified relief as the Plaintiffs may request and/or this Court may deem proper.

Dated: February 8, 2019                    Respectfully submitted,

                                           Law Offices of Bernal Peter Ojeda

                                           By:  */s/* Bernal Peter Ojeda_____
                                                Bernal Peter Ojeda
                                                Attorney for Plaintiffs/Petitioners

PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF