BERNAL PETER OJEDA
Attorney at Law
LAW OFFICES OF BERNAL PETER OJEDA
2945 Townsgate Road, Suite 200
The Westlake Park Place Office, POB 3664
Westlake Village, CA 91359-0664
Tel: (888) 450-2501
Fax: (866) 569-1898
eMail: *bernalpojeda@appealworks.com*

*Counsel for Petitioners and Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| Cesar Jacobo LUNA-FLORES, et al., | No. **'19CV0316 JM   BLM** |
|---|---|
| *Petitioners-Plaintiffs,*<br><br>vs.<br><br>U.S. Department of Homeland Security ("DHS"), et al.,<br><br>*Respondents-Defendants,* | **INDEX OF EXHIBITS AND ADDENDUMS.**<br><br>**IMMIGRATION ACTION** |

1

# INDEX OF PAGINATED ADDENDUMS AND EXHIBITS

Item_____Page#

Addendum A ................................................................................................ A1

Addendum B ................................................................................................ B1

Group Exhibits A ........................................................................................... 1

Group Exhibits B .......................................................................................... 26

Group Exhibits C .......................................................................................... 35

Group Exhibits D ......................................................................................... 46

INDEX OF EXHIBITS AND ADDENDUMS TO
PETITION FOR A WRIT OF HABEAS CORPUS AND
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF.

**ADDENDUM A**

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**
**Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture**

| | |
|---|---|
| **DISTRIBUTION:** | ICE |
| **DIRECTIVE NO.:** | 11002.1 |
| **ISSUE DATE:** | December 8, 2009 |
| **EFFECTIVE DATE:** | January 4, 2010 |
| **SUPERSEDES:** | See section 3. |
| **FEA NUMBER:** | 601-05 |

1. **PURPOSE.** The purpose of this ICE policy directive is to ensure transparent, consistent, and considered ICE parole determinations for arriving aliens seeking asylum in the United States. This directive provides guidance to Detention and Removal Operations (DRO) Field Office personnel for exercising their discretion to consider the parole of arriving aliens processed under the expedited removal provisions of section 235 of the Immigration and Nationality Act (INA) who have been found to have a "credible fear" of persecution or torture by U.S. Citizenship and Immigration Services (USCIS) or an immigration judge of the Executive Office for Immigration Review. This directive establishes a quality assurance process that includes record-keeping requirements to ensure accountability and compliance with the procedures set forth herein.

1.1. This directive does not apply to aliens in DRO custody under INA § 236. This directive applies only to arriving aliens who have been found by USCIS or an immigration judge to have a credible fear of persecution or torture.

2. **AUTHORITIES/REFERENCES.**

2.1. INA §§ 208, 212(d)(5), 235(b), and 241(b)(3); 8 U.S.C. §§ 1158, 1182(d)(5), 1225(b), and 1231(b)(3); 8 C.F.R. §§ 1.1(q), 208.30(e)-(f), 212.5 and 235.3.

2.2. Department of Homeland Security Delegation Number 7030.2, "Delegation of Authority to the Assistant Secretary for the Bureau of Immigration and Custom Enforcement" (Nov. 13, 2004).

2.3. ICE Delegations of Authority to the Directors, Detention and Removal and Investigations and to Field Office Directors, Special Agents in Charge and Certain Other Officers of the Bureau of Immigration and Customs Enforcement, No. 0001 (June 6, 2003).

3. **SUPERSEDED POLICIES AND GUIDANCE.** The following ICE directive is hereby superseded:

3.1. ICE Policy Directive No. 7-1.0, "Parole of Arriving Aliens Found to Have a 'Credible Fear' of Persecution or Torture" (Nov. 6, 2007).

4.  **BACKGROUND.**

4.1.  Arriving aliens processed under the expedited removal provisions of INA §235(b) may pursue asylum and related forms of protection from removal if they successfully demonstrate to USCIS or an immigration judge a credible fear of persecution or torture.

4.2.  Arriving aliens who establish a credible fear of persecution or torture are to be detained for further consideration of the application for asylum. INA § 235(b)(1)(B)(ii). Such aliens, however, may be paroled on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding. 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 235.3(c) (providing that aliens referred for INA § 240 removal proceedings, including those who have a credible fear of persecution or torture, may be paroled under § 212.5(b) standards).

4.3.  The applicable regulations describe five categories of aliens who may meet the parole standards based on a case-by-case determination, provided they do not present a flight risk or security risk: (1) aliens who have serious medical conditions, where continued detention would not be appropriate; (2) women who have been medically certified as pregnant; (3) certain juveniles; (4) aliens who will be witnesses in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies in the United States; and (5) aliens whose continued detention is not in the public interest. *See* 8 C.F.R. § 212.5(b). *But compare* 8 C.F.R. § 235.3(b)(4)(ii) (stating that arriving aliens who have not been determined to have a credible fear will not be paroled unless parole is necessary in light of a "medical emergency or is necessary for a legitimate law enforcement objective").

4.4.  While the first four of these categories are largely self-explanatory, the term "public interest" is open to considerable interpretation. This directive explains how the term is to be interpreted by DRO when it decides whether to parole arriving aliens determined to have a credible fear. The directive also mandates uniform record-keeping and review requirements for such decisions. Parole remains an inherently discretionary determination entrusted to the agency; this directive serves to guide the exercise of that discretion.

5.  **DEFINITIONS:**

5.1.  **Arriving Alien.** For purposes of this directive, "arriving alien" has the same definition as provided for in 8 C.F.R. § 1.1(q) and 1001.1(q).

5.2.  **Credible Fear.** For purposes of this directive, with respect to an alien processed under the INA § 235(b) "expedited removal" provisions, "credible fear" means a finding by USCIS or an immigration judge that, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts

Addendum A 2

as are known to the interviewing USCIS officer or immigration judge, there is a significant possibility that alien could establish eligibility for asylum under INA § 208, withholding of removal under INA § 241(b)(3), or protection from removal under the Convention Against Torture.

5.3.   **Parole.** For purposes of this directive, "parole" is an administrative measure used by ICE to temporarily authorize the release from immigration detention of an inadmissible arriving alien found to have a credible fear of persecution or torture, without lawfully admitting the alien. Parole does not constitute a lawful admission or a determination of admissibility, *see* INA §§ 212(d)(5)(A), 101(a)(13)(B), and reasonable conditions may be imposed on the parole, *see* 8 C.F.R. § 212.5(d). By statute, parole may be used, in the discretion of ICE and under such conditions as ICE may prescribe, only for urgent humanitarian reasons or for significant public benefit. As interpreted by regulation, "urgent humanitarian reasons" and "significant public benefit" include the five categories set forth in 8 C.F.R. § 212.5(b) and listed in paragraph 4.3 of this directive, including the general category of "aliens whose continued detention is not in the public interest."

## 6.   POLICY.

6.1.   As soon as practicable following a credible fear determination by USCIS for an arriving alien detained by DRO, DRO shall provide the alien with the attached *Parole Advisal and Scheduling Notification*. This form informs the alien that he or she will be interviewed for potential parole from DRO custody and notifies the alien of the date of the scheduled interview and the deadline for submitting any documentary material supporting his or her eligibility for parole. The contents of the notification shall be explained to such aliens in a language they understand. In determining whether detained arriving aliens found to have a credible fear should be paroled from custody, DRO shall proceed in accordance with the terms of this directive.

6.2.   Each alien's eligibility for parole should be considered and analyzed on its own merits and based on the facts of the individual alien's case. However, when an arriving alien found to have a credible fear establishes to the satisfaction of DRO his or her identity and that he or she presents neither a flight risk nor danger to the community, DRO should, absent additional factors (as described in paragraph 8.3 of this directive), parole the alien on the basis that his or her continued detention is not in the public interest. DRO Field Offices shall uniformly document their parole decision-making processes using the attached *Record of Determination/Parole Determination Worksheet*.

6.3.   Consistent with the terms of this directive, DRO shall maintain national and local statistics on parole determinations and have a quality assurance process in place to monitor parole decision-making, as provided for in sections 7 and 8 of this directive.

Addendum A 3

6.4. In conducting parole determinations for arriving aliens in custody after they are found to have a credible fear of persecution or torture, DRO shall follow the procedures set forth in section 8 of this directive.

6.5. DRO shall provide every alien subject to this directive with written notification of the parole decision, including a brief explanation of the reasons for any decision to deny parole. When DRO denies parole under this directive, it should also advise the alien that he or she may request redetermination of this decision based upon changed circumstances or additional evidence relevant to the alien's identity, security risk, or risk of absconding. DRO shall ensure reasonable access to translation or interpreter services if notification is provided to the alien in a language other than his or her native language and the alien cannot communicate effectively in that language.

6.6. Written notifications of parole decisions shall be provided to aliens subject to this directive and, if represented, their representative within seven days of the date an alien is initially interviewed for parole or the date the alien requests a parole redetermination, absent reasonable justification for delay in providing such notification.

6.7. A decision to grant or deny parole shall be prepared by a DRO officer assigned such duties within his or her respective DRO Field Office. The decision shall pass through at least one level of supervisory review, and concurrence must be finally approved by the Field Office Director (FOD), Deputy FOD (DFOD), or Assistant FOD (AFOD), where authorized by the FOD.

7. **RESPONSIBILITIES.**

7.1. The **DRO Director** is responsible for the overall management of the parole decision-making process for arriving aliens in DRO custody following determinations that they have a credible fear of persecution or torture.

7.2. The **DRO Assistant Director for Operations** is responsible for:

1) Ensuring considered, consistent DRO parole decision-making and recordkeeping nationwide in cases of arriving aliens found to have a credible fear;

2) Overseeing monthly tracking of parole statistics by all DRO Field Offices for such cases; and

3) Overseeing an effective national quality assurance program that monitors the Field Offices to ensure compliance with this directive.

7.3. **DRO Field Office Directors** are responsible for:

1) Implementing this policy and quality assurance processes;

4

Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture

Addendum A 4

2) Maintaining a log of parole adjudications for credible fear cases within their respective geographic areas of responsibility, including copies of the *Record of Determination/Parole Determination Worksheet*;

3) Providing monthly statistical reports on parole decisions for arriving aliens found to have a credible fear;

4) Making the final decision to grant or deny parole for arriving aliens found to have a credible fear within their respective areas of responsibility or, alternatively, delegating such responsibility to their DFODs or AFODs (in which case, FODs nevertheless retain overall responsibility for their office's compliance with this directive regardless of delegating signatory responsibility to DFODs or AFODs); and

5) Ensuring that DRO field personnel within their respective areas of responsibility who will be assigned to make parole determinations are familiar with this directive and corresponding legal authorities.

7.4.  **DRO Deputy Field Office Directors** are responsible for reviewing, and forwarding for their respective FODs' approval, parole decisions prepared by their subordinates in the cases of arriving aliens found to have a credible fear of persecution or torture. Alternatively, DFODs delegated responsibility under paragraph 7.3 of this directive are responsible for discharging final decision-making authority over parole determinations in such cases within their respective areas of responsibility.

7.5.  **Assistant Field Office Directors** are responsible for reviewing, and forwarding for their respective DFODs' or FODs' approval, parole decisions prepared by their subordinates in the cases of arriving aliens found to have a credible fear of persecution or torture. Alternatively, AFODs delegated responsibility under paragraph 7.3 of this directive are responsible for discharging final decision-making authority over parole determinations in such cases within their respective areas of responsibility.

7.6.  As applicable, **DRO field personnel** so assigned by their local chains-of-command are responsible for providing detained arriving aliens found to have a credible fear with the attached *Parole Advisal and Scheduling Notification* and for fully and accurately completing the attached *Record of Determination/Parole Determination Worksheet* in accordance with this directive and corresponding legal authorities.

8.  **PROCEDURES.**

8.1.  As soon as practicable following a finding that an arriving alien has a credible fear, the DRO Field Office with custody of the alien shall provide the attached *Parole Advisal and Scheduling Notification* to the alien and explain the contents of the notification to the alien in a language he or she understands, through an interpreter if

5

necessary. The Field Office will complete the relevant portions of the notification, indicating the time when the alien will receive an initial interview on his or her eligibility for parole and the date by which any documentary evidence the alien wishes considered should be provided, as well as instructions for how any such information should be provided.

8.2     Unless an additional reasonable period of time is necessary (e.g., due to operational exigencies or an alien's illness or request for additional time to obtain documentation), no later than seven days following a finding that an arriving alien has a credible fear, a DRO officer familiar with the requirements of this directive and corresponding legal authorities must conduct an interview with the alien to assess his or her eligibility for parole. Within that same period, the officer must complete the *Record of Determination/Parole Determination Worksheet* and submit it for supervisory review. If the officer concludes that parole should be denied, the officer should draft a letter to this effect for the FOD's, DFOD's, or AFOD's signature to be provided to the alien or the alien's representative and forward this letter for supervisory review along with the completed *Record of Determination/Parole Determination Worksheet*. The letter must include a brief explanation of the reasons for denying parole and notify the alien that he or she may request redetermination of parole based upon changed circumstances or additional evidence relevant to the alien's identity, security risk, or risk of absconding.

8.3.    An alien should be paroled under this directive if DRO determines, in accordance with paragraphs (1) through (4) below, that the alien's identity is sufficiently established, the alien poses neither a flight risk nor a danger to the community, and no additional factors weigh against release of the alien.

1) Identity.

   a) Although many individuals who arrive in the United States fleeing persecution or torture may understandably lack valid identity documentation, asylum-related fraud is of genuine concern to ICE, and DRO must be satisfied that an alien is who he or she claims to be before releasing the alien from custody.

   b) When considering parole requests by an arriving alien found to have a credible fear, Field Office personnel must review all relevant documentation offered by the alien, as well as any other information available about the alien, to determine whether the alien can reasonably establish his or her identity.

   c) If an alien lacks valid government-issued documents that support his or her assertion of identity, Field Office personnel should ask whether the alien can obtain government-issued documentation of identity.

6

Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture

    d) If the alien cannot reasonably provide valid government-issued evidence of identity (including because the alien reasonably does not wish to alert that government to his or her whereabouts), the alien can provide for consideration sworn affidavits from third parties. However, third-party affiants must include copies of valid, government issued photo-identification documents and fully establish their own identities and addresses.

    e) If government-issued documentation of identity or third-party affidavits from reliable affiants are either not available or insufficient to establish the alien's identity on their own, Field Office personnel should explore whether the alien is otherwise able to establish his or her identity through credible statements such that there are no substantial reasons to doubt the alien's identity.

2) Flight Risk.

    a) In order to be considered for release, an alien determined to have a credible fear of persecution or torture must present sufficient evidence demonstrating his or her likelihood of appearing when required.

    b) Factors appropriate for consideration in determining whether an alien has made the required showing include, but are not limited to, community and family ties, employment history, manner of entry and length of residence in the United States, stability of residence in the United States, record of appearance for prior court hearings and compliance with past reporting requirements, prior immigration and criminal history, ability to post bond, property ownership, and possible relief or protection from removal available to the alien.

    c) Field Office personnel shall consider whether setting a reasonable bond and/or entering the alien in an alternative-to-detention program would provide reasonable assurances that the alien will appear at all hearings and depart from the United States when required to do so.

    d) Officers should exercise their discretion to determine what reasonable assurances, individually or in combination, are warranted on a case-by-case basis to mitigate flight risk. In any event, the alien must be able to provide an address where he or she will be residing and must timely advise DRO of any change of address.

7

3) Danger to the Community.

    a) In order for an alien to be considered for parole, Field Office personnel must make a determination whether an alien found to have a credible fear poses a danger to the community or to U.S. national security.

    b) Information germane to the determination includes, but is not limited to, evidence of past criminal activity in the United States or abroad, of activity contrary to U.S. national security interests, of other activity giving rise to concerns of public safety or danger to the community (including due to serious mental illness), disciplinary infractions or incident reports, and any criminal or detention history that shows that the alien has harmed or would likely harm himself or herself or others.

    c) Any evidence of rehabilitation also should be weighed.

4) Additional Factors.

    a) Because parole remains an inherently discretionary decision, in some cases there may be exceptional, overriding factors that should be considered in addition to the three factors discussed above. Such factors may include, but are not limited to, serious adverse foreign policy consequences that may result if the alien is released or overriding law enforcement interests.

    b) Field Office personnel may consider such additional factors during the parole decision-making process.

8.4. Assigned DRO officers should, where appropriate, request that parole applicants provide any supplementary information that would aid the officers in reaching a decision. The *Record of Determination/Parole Determination Worksheet* should be annotated to document the request for supplementary information and any response from the detainee.

8.5. After preparing and signing the *Record of Determination/Parole Determination Worksheet*, and in the case of a denial of parole, drafting a written response to the alien, the assigned DRO officer shall forward these materials and the parole request documentation to his or her first-line supervisor for review and concurrence.

8.6. Upon his or her concurrence, the first-line supervisor shall sign the *Record of Determination/Parole Determination Worksheet* where indicated and forward it, along with any related documentation, to the FOD (or, where applicable, the DFOD or AFOD) for final approval.

8.7. The FOD (or, where applicable, the DFOD or AFOD) shall review the parole documentation, consult with the preparing officer and supervisor as necessary, and

8

Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture

either grant or deny parole by signing the *Record of Determination/Parole Determination Worksheet* where indicated and, in the case of a denial, signing the written response to the alien.

8.8. Following a final decision by the FOD to deny parole (or, where applicable, the DFOD or AFOD), the Field Office shall provide the written response to the alien or, if represented, to the alien's legal representative, indicating that parole was denied. If parole is granted, the Field Office shall provide the alien with a date-stamped I-94 Form bearing the following notation: **"Paroled under 8 C.F.R. § 212.5(b). Employment authorization not to be provided on this basis."**

8.9. If an alien makes a written request for redetermination of an earlier decision denying parole, the Field Office may, in its discretion, reinterview the alien or consider the request based solely on documentary material already provided or otherwise of record.

8.10. The supporting documents and a copy of the parole decision sent to the alien (if applicable), the completed *Record of Determination/Parole Determination Worksheet*, and any other documents related to the parole adjudication should be placed in the alien's A-file in a record of proceeding format. In addition, a copy of the *Record of Determination/Parole Determination Worksheet* shall be stored and maintained under the authority of the FOD for use in preparing monthly reports.

8.11. On a monthly basis, FODs shall submit reports to the Assistant Director for Operations, or his or her designee, detailing the number of parole adjudications conducted under this directive within their respective areas of responsibility, the results of those adjudications, and the underlying basis of each Field Office decision whether to grant or deny parole. The Assistant Director for Operations, or his or her designee, in conjunction with appropriate DRO Headquarters components, will analyze this reporting and collect individual case information to review in more detail, as warranted. In particular, this analysis will rely on random sampling of all reported cases for in-depth review and will include particular emphasis on cases where parole was not granted because of the presence of additional factors, per paragraph 8.3(4) of this directive. Any significant or recurring deficiencies identified during this monthly analysis should be explained to the affected Field Office, which will take appropriate corrective action.

8.12. At least once every six months, the Assistant Director for Operations, or his or her designee, shall prepare a thorough and objective quality assurance report, examining the rate at which paroled aliens abscond and the Field Offices' parole decision-making, including any noteworthy trends or corrective measures undertaken based upon the monthly quality assurance analysis required by paragraph 8.11 of this directive.

9

9.   **ATTACHMENTS.**

   - *Parole Advisal and Scheduling Notification.*
   - *Record of Determination/Parole Determination Worksheet.*

10.   **NO PRIVATE RIGHTS CREATED.**  This directive is an internal policy statement of ICE.  It is not intended to, shall not be construed to, may not be relied upon to, and does not create, any rights, privileges, or benefits, substantive or procedural, enforceable by any party against the United States, its departments, agencies, or other entities, its officers or employees, or any other person.

**Approved:**

John Morton
Assistant Secretary
U.S. Immigration and Customs Enforcement

Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture

Addendum A 10

**ADDENDUM B**

# U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

## Policy 11022.1:  Detainee Transfers

| | |
|---|---|
| **Issue Date:** | **January 4, 2012** |
| **Effective Date:** | **January 4, 2012** |
| **Superseded:** | All Immigration and Customs Enforcement (ICE) documents that reference or provide guidance related to detainee transfers must be revised in accordance with this Directive. |

**Federal Enterprise Architecture Number:**  306-112-002b

1. **Purpose/Background.**  This Directive establishes new prioritized transfer determinations that are meant to minimize, to the extent possible, detainee transfers outside the area of responsibility and to provide cost savings to the agency.

   This Directive consolidates and revises existing policies on how field offices make detainee transfer determinations and conducts transfers out of the Area of Responsibility (AOR).  Transfers of detainees within the AOR are not covered by this Directive.

   This Directive establishes responsibilities and procedures for ICE employees who perform detainee transfers and does not govern contract staff.  ICE employees are advised that responsibilities and procedures for contract staff can be found in their respective vendor agreements

2. **Policy.**  All detainee transfers and transfer determinations will be based on a thorough and systematic review of the most current information available.

3. **Definitions.**  The following definitions apply for purposes of this Directive only.

3.1. **Area of Responsibility (AOR).**  The geographic area of responsibility under the authority of a Field Office Director (FOD).

3.2. **Detainee transfer.**  The transfer of a detainee from one AOR to another.  The term does not include intake processing, or the transfer of aliens from facilities that are authorized for less than 72 hours, hold rooms, U.S. Customs and Border Protection Border Patrol stations, or Ports of Entry.  The term detainee transfer does not include the transfer of aliens to staging areas or facilities for the purpose of facilitating a scheduled final removal of aliens from the United States, nor does it include the final removal of aliens from the United States.

3.3. **Immediate family.**  This may include: mothers, fathers, step-parents, foster parents, brothers, sisters, stepbrothers, stepsisters, biological and adopted children, stepchildren, foster children, and spouses, including common-law marriage or civil unions and

2

cohabitating domestic partnerships legally recognized by a state or other governmental entity (e.g. District of Columbia, Puerto Rico, Guam).

**3.4.** **Workday(s).** Monday through Friday excluding holidays or other local Enforcement and Removal Operations (ERO)/Executive Office for Immigration Review (EOIR) office closures.

**4.** **Responsibilities.**

**4.1.** **FODs, Supervisory Immigration Officers, Attorneys, Immigration Officers and Medical Staff** are responsible for complying with the policy and procedures set forth in this Directive.

**4.2.** **FODs** are responsible for disseminating and enforcing this Directive and in conjunction with the Office of the Principal Legal Advisor (OPLA), developing protocols with EOIR court administrators within their AOR that ensure a regular exchange of timely and accurate hearing and detainee transfer schedule information.

**5.** **Procedures.**

**5.1.** **Filing of the Notice to Appear (NTA) for Transfers.** Unless impracticable because of logistical or other compelling factors that delay submission on a temporary or ongoing basis, NTAs will be submitted to EOIR within five (5) workdays of the NTA being served on the alien, or upon the alien entering ICE custody, whichever is later. Proper submission of an NTA does not require delivery confirmation, receipt or further action by EOIR. NTAs mailed to EOIR will only require postmark within the five (5) workdays to be considered timely. All NTAs mailed will utilize a service which tracks mailing and receipt dates.

As a general rule, detainees will not be transferred without the A-Files, T-Files, or work folders. If an A-File, T-File, or work folder does not accompany the transferred alien, the five (5) workdays provided for submitting the NTA to EOIR will not begin until the appropriate case officer, agent or other ICE employee who submits NTAs to EOIR receives the A-File, T-File or work folder.

**5.2.** **Transfer Determinations.**

1) Unless a transfer is deemed necessary by a FOD or his or her designee under paragraph (3) of this section, ICE Supervisory Immigration Officer(s) will not transfer a detainee when there is documentation to support the following:

a) Immediate family within the AOR;

b) An attorney of record (Form G-28, *Notice of Entry of Appearance as Attorney or Accredited Representative* on file) within the AOR;

**Addendum B 2**

3

    c) Pending or on-going removal proceedings, where notification of such proceedings has been given, within the AOR; or

    d) Been granted bond or has been scheduled for a bond hearing.

2) The Immigration Officer will conduct a review to determine whether any of these factors exist. Before a transfer is made in a case where one or more of these factors exist, the transfer must be approved at the Assistant Field Office Director level or higher, and the reasons for the transfer must be documented in the detainee's A-File.

3) A transfer may be deemed necessary by a FOD or his or her designee for any of the following reasons:

    a) To provide appropriate medical or mental health care to the detainee.

    b) To fulfill an approved transfer request by the detainee.

    c) For the safety and security of the detainee, other detainees, detention personnel or any ICE employee.

    d) At ICE's discretion, for the convenience of the agency when the venue of EOIR proceedings is different than the venue in which the alien is detained.

    e) To transfer to a more appropriate detention facility based on the detainee's individual circumstances and risk factors.

    f) Termination of facility use due to failure to meet ICE detention standards, lack of sufficient use of the facility by ICE, or emergent situations.

    g) To relieve or prevent facility overcrowding; in such cases, efforts should first be made to identify for transfer those detainees who do not meet any of the criteria listed in section 5.2(1).

4) *Orantes* Class Members.

    a) ICE is prohibited from transferring Salvadoran class members who are not represented by counsel, from the judicial district of their apprehension for at least seven days to afford them the opportunity to secure counsel.

        i) The only exception to this rule applies to class members who are subject to expedited removal final orders. See *Orantes-Hernandez v. Gonzales*, No. 82-01107, Modified Consolidated Injunction, at paragraph 11.b. (C.D. Cal. Nov. 26, 2007).

Addendum B 3

4

b) Salvadoran class members who *are* represented by counsel or obtain representation within the seven-day period can be transferred to other locations, but venue remains in the judicial district where each member's counsel is located.

c) For any questions regarding the treatment of Salvadoran nationals in ICE custody, pursuant to the requirements of the *Orantes* settlement agreement, please contact the local ICE Office of Chief Counsel.

5) ICE Supervisory Immigration Officers will conduct a thorough review of the most current information available to make all detainee transfer determinations.

**5.3.   Notifications in the Event of a Detainee Transfer.**

1) ICE will ensure that all necessary notifications are made to detainees and their attorneys when detainees are transferred. ICE is not required to notify family members or other third parties of a transfer.

2) Attorney notification. If a detainee has an attorney of record (Form G-28 on file), the sending field office will:

a) Notify the attorney that the detainee is being transferred and include the reason for the transfer and the name, location, and telephone number of the new facility as soon as practicable on the day of the transfer, but in no circumstances later than twenty four (24) hours after the transfer occurs.

b) Document the notification in:

i) The Detainee Transfer Check List; and

ii) The appropriate comments screen in ENFORCE.

c) Delay the notification when there are special security concerns, but only for the period of time justified by those concerns.

d) Appropriately document concerns in the detainee's A-File and the appropriate comments screen in ENFORCE.

3) Detainee notification. Immediately prior to transfer, the sending field office will ensure that the detainee is informed, in a language or manner he/she can understand, that he/she is being transferred to another facility and is not being removed (if applicable).

a) To ensure the safety of ICE personnel, ICE will ensure that specific plans and time schedules are not discussed with detainees and that following notification, the detainee:

---

Detainee Transfers

**Addendum B 4**

5

    i) Is not permitted to make or receive any telephone calls until the detainee reaches the destination facility;

    ii) Does not have contact with any detainee in the general population until the detainee reaches the destination facility; and

    iii) Is notified that upon admission into the receiving facility, the detainee may place a domestic phone call, at no expense to the detainee.

b) The sending office will ensure that the detainee notification is documented in:

    i) The Detainee Transfer Notification form; and

    ii) The appropriate comments screen in ENFORCE.

c) At the time of the transfer, ICE will provide the detainee, in writing, the name, address, and telephone number of the facility to which they are being transferred, using the Detainee Transfer Notification form. ICE place a copy of the form in the detainee's A-File.

d) ICE will make sure that the detainee acknowledges, in writing, that they have received the transfer destination information and that it is their responsibility to notify family members if so desired, upon admission into the receiving facility.

4) <u>EOIR notification.</u> If a detainee has pending proceedings before EOIR, ICE must submit Form I-830, *Notice to EOIR: Alien Address*. If the alien has an appeal pending with Bureau of Immigration Appeals (BIA), the BIA must be notified. In all cases, a copy of Form I-830 will be placed in the A-file.

**5.4.   Requests for Bed/Designation Transfers from Field Office to Field Office.**

1) FODs or their designees are responsible for ensuring that field offices which routinely transfer cases:

a) Establish a means of communication so that receiving field offices provide sending field offices daily information regarding available bed space; and

b) Provide the names and contact numbers of staff responsible for handling transfers.

2) While field offices are encouraged to communicate directly regarding available bed space, the headquarters Removal Management Division (RMD) is available to assist a field office that has unsuccessfully attempted to locate space.

3) Field offices seeking bed space in other field office jurisdictions should phone the request (or e-mail with a follow-up phone call) with sufficient details of the case to the designated field office contact.

6

4) Once a field office has preliminarily agreed to accept a detainee from another office, ICE will ensure that:

    a) The Form I-216, *Record of Persons and Property Transfer* is completed;

    b) Complete information detailing the alien's criminal history, medical or mental health concerns, or security risks is provided.

    c) Medical or mental health problems or prescribed medications are documented, either on Form USM-553 (or equivalent), *Medical Summary of Federal Prisoner/Alien in Transit*, or Form I-794, *In-Processing Health Screening*, and the form accompanies Form I-216;

    d) Security concerns are outlined on a separate page and attached to Form I-216; and

    e) A copy of the age verification documentation is attached if it is suspected that the detainee is a juvenile.

5) The FOD(s) or their designee(s) will arrange a method of providing medical histories to Intergovernmental Service Agreement (IGSA) facilities if the IGSA requires that the medical unit review medical histories prior to accepting a transfer.

6) The receiving field office will ensure that Form I-216 is reviewed for consistency with information previously communicated. If there are issues that were not previously relayed to the receiving field office, ICE Supervisory Immigration Officers at the receiving field office will ensure that the sending field office is notified that the transfer request may be declined unless the issues are resolved.

7) Once the receiving field office has agreed to accept the transfer of the detainee on Form I-216, the sending field office will communicate a mutually agreeable estimated time of arrival. The sending field office may not substitute any detainee on Form I-216 without prior approval of the receiving field office.

**5.5.   Detainee Transfer Checklist and Transfer Notification Form.**

1) ICE will ensure that both the Detainee Transfer Checklist and Transfer Notification Form are completed and placed in the detainee's A-File or work folder; and that the A-File or work folder accompanies the detainee to the receiving facility.

2) If the Detainee Transfer Checklist cannot be completed prior to transfer, the detainee may be transferred only if the authorized receiving FOD or his or her designee has expressly waived that procedure. The sending field office will note any such waiver in the A-File.

---

Addendum B 6

7

5.6.   A-File.

1)  Prior to transfer, the sending field office will ensure that the A-File is obtained and, in accordance with the appropriate procedures of the ICE Policy Directive titled, "Alien Registration File (A-File) Creation, Maintenance, Organization, and Disclosure of Information":

   a)  Forward the A-File to USCIS for consolidation; and

   b)  Attach all documents and forms on the proper side of the A-File.

2)  The sending field office will ensure that the A-File includes copies of the following properly executed documents, fastened in the file:

   a)  I-216 and appropriate copies of Form I-77, Baggage Check (or IGSA equivalent);

   b)  Form USM-553 or local Medical Transfer Summary form;

   c)  Copy of Form I-213, *Record of Deportable Alien Form*;

   d)  Original or photocopy of Form I-203/203A, *Order to Detain/Release Alien*;

   e)  Detainee Transfer Checklist;

   f)  Age verification documents (if applicable);

   g)  A copy or printout of all previous Post Order Custody Reviews (POCRs) and travel document requests in a property envelope fastened to the file;

   h)  Classification sheet;

   i)  Charging documents/records of proceedings;

   j)  Certified copies of convictions;

   k)  Fingerprint cards;

   l)  Photographs; and,

   m) Printouts from the Central Index System (CIS), ENFORCE and the FBI NCIC database.

3)  If the sending field office is unable to obtain the A-File (and does not have a fully documented Temporary File), the detainee may not be transferred unless the receiving

8

field office, before the transfer takes place, accepts a work folder created by the sending field office that includes, at a minimum:

   a) Certified copies of convictions or information as addressed in section 5.8;

   b) Printouts from the Central Index System (CIS), ENFORCE, and the Federal Bureau of Investigation's (FBI) National Crime Information Center (NCIC) database;

   c) Charging documents/copies of the EOIR record of proceedings;

   d) Photographs and fingerprints;

   e) A Computer Linked Application Information Management System (CLAIMS) printout;

   f) A Treasury Enforcement Communications System (TECS) printout; and

   g) Any other documents reasonably requested by the receiving field office.

4) The sending field office will ensure that the A-File or work folder accompanies the transfer, except for cases where the receiving field office requests that the A-File or work folder be mailed by overnight express to a particular location. If requested, the sending field office will ensure that it is mailed no later than the following business day.

5) The sending field office shall communicate as soon as possible any anticipated significant delays in the arrival time of the detainees or their files.

**5.7.   Charging Documents/Record of Proceeding.**

1) Before the transfer, all charging documents will be issued and signed by the individual with signatory authority for the sending field office.

2) If applicable, prior to transfer, all charging documents will be served on the detainee, including, but not limited to:

   a) Form I-862, *Notice to Appear*;

   b) Form I-200, *Warrant of Arrest*;

   c) Form I-205, *Warrant of Removal*;

   d) Form I-286, *Notification of Custody Decision*; and

   e) Form I-826, *Notice of Rights*.

---

**Addendum B 8**

3) ICE will ensure that original charging documents or copies, if the originals have been submitted to EOIR (indicating proper service), are included in the A-File. A copy of the charging documents will be provided to the detainee.

**5.8.    Certified Copies of Convictions.** A detainee may not be transferred if the certified copies of conviction relating to the charging document are not included in the A-File or work folder, unless the receiving field office has agreed in writing in advance to accept the case. In such instances, the sending field office will provide the Detainee Transfer Checklist point-of-contact names and phone numbers provided for:

1) The person at the sending field office responsible for obtaining the conviction record; and

2) An individual at the respective court or clerk's office where the record is located.

**5.9.    Fingerprint Cards.** The sending field office will send the completed fingerprint cards in the A-File or work folder as noted below:

1) The cards will be signed by the alien and the official taking the fingerprints;

2) The cards will be completely filled out except for the address block requesting a disposition from the FBI;

3) The completed cards will be left in the A-File or work folder for the receiving field office to fill in the response address block and submit to the FBI and DHS Biometrics Support Center (when appropriate), unless the detainee is a Room-and-Board case (short-term staging); and

4) One fingerprint card should remain in the A-File or work folder at all times.

**5.10.   Photographs.** The sending field office will take four (1 sheet of 4) new, standard booking-size photographs on photo quality paper and include any photos not needed for the transfer in the A-File or work folder.

**5.11.   Medical Procedures and Information Required for Transfer.**

1) In advance of the transfer, ICE will ensure that the receiving facility is provided the USM-553 (facsimile or email is acceptable)

2) Transfer of the Detainee's Medical Record.

   a) When a detainee is transferred within the ICE Health Service Corps (IHSC) system, IHSC will provide:

      i) Form USM-553, or equivalent Medical Transfer Summary, and a copy of the detainee's full medical record; and

10

     ii) The full medical record in a sealed envelope or other container labeled with the detainee's name and A-number and marked "MEDICAL CONFIDENTIAL."

   b) When a detainee is transferred to an IGSA detention facility, ICE will ensure that the Transfer Summary will accompany the detainee. Whenever possible, a copy of the full medical record should accompany each detainee during transfer. If the full medical record is not available, it must be sent as soon as possible. FODs will work with IGSAs to make arrangement for the transfer of the full medical record.

3) <u>Medical Transfer Summary</u>.

   a) The sending facility's medical staff will prepare a Medical Transfer Summary that must accompany the detainee. Either Form USM-553 or a facility-specific form may be used, provided it shows:

     i) Tuberculosis (TB) clearance, including Purified Protein Derivative (PPD) with the test dates, and chest x-ray results if the detainee has received a positive PPD reading;

     ii) Current mental and physical health status, including all significant health issues;

     iii) Current medications, with specific instructions for medications that must be administered en route; and

     iv) The name and contact information of the transferring medical official.

   b) The transporting officer may not transport a detainee without the Medical Transfer Summary.

   c) The transporting officer will review the information for completeness and make sure that he or she has the in-transit supplies required to provide to the detainee as indicated on the USM-553 or equivalent Medical Transfer Summary.

   d) Medical information is available to staff only on a need-to-know basis.

     i) Any officer who reviews the Medical Transfer Summary will protect the privacy of the detainee's medical information to the greatest extent possible.

     ii) Personnel may not share medical information unless necessary to safely fulfill transportation responsibilities.

11

    e)  The transporting officer will deliver the Medical Transfer Summary to medical personnel, if practicable, or other staff at the receiving facility and will advise them of any medications provided to the detainee in transit.

4)  <u>Medical or Psychiatric Alert</u>.

    a)  Appropriate medical staff will notify the facility administrator when they determine that a detainee's physical or mental condition requires:

        i)  Clearance by the medical staff prior to transfer; or

        ii)  Medical escort and specialized care (e.g. dialysis) during transfer.

5)  <u>Medications</u>.

    a)  Prior to transfer, medical staff will provide the transporting officers instructions and, if applicable, medication(s) for the detainee's care in transit.

    b)  Medical staff will ensure that the detainee is transferred with, at a minimum, seven (7) days worth of prescription medications (for TB medications, up to 15 days' supply) to guarantee the continuity of care throughout the transfer and subsequent intake process.

    c)  ICE will ensure that medications:

        i)  Are placed in a property envelope labeled with the detainee's name and A-number and appropriate administration instructions;

        ii)  Accompany the transfer; and

        iii)  If unused, are turned over to the receiving medical personnel.

**5.12.   Other Transfer Paperwork.**

1)  ICE will ensure that no detainee is transferred without a properly executed Form G-391, I-213, I-216, I-203/I-203A, or equivalent. IGSA facilities may use a local form as long as the form provides the required information.

2)  ICE Supervisory Immigration Officers will ensure that records are checked to ascertain if the alien has a criminal history, is dangerous, or has an escape record or medical condition. Any information of an adverse nature must be clearly indicated on the Form G-391, I-216, I-203, or equivalent, and the escorting officers will be notified of the risk and warned to take the necessary precautions.

3)  Before beginning the transfer or the detail, the escorting and transportation officers will read their instructions and clearly understand the purpose for which the detainee

12

is being removed from the facility. The officers will also discuss emergency contingency plans with a supervisor and/or authorized ICE official before departure.

4) ICE will ensure that Form I-216:

   a) Includes the detainee's name, A-number and detention category;

   b) Indicates if the detainee has a criminal conviction, a history of violence, is an escape risk, or has a medical condition that may require attention during the transfer;

   c) Notes whether the detainee is on prescription medication; and

   d) Indicates the time of arrival estimated by the sending field office.

5) ICE will ensure that Form G-391, I-203/I-203A, or equivalent:

   a) Is properly signed and clearly indicates the name and A-number of the detainee(s);

   b) Indicates the place or places to be escorted; and

   c) Notes the purpose of the trip and other information necessary to efficiently carry out the transfer, or detail.

6) The receiving field office may request that copies of Form I-203/I-203A or I-213 be transmitted directly from the sending field office to the receiving facility.

## 5.13. Property.

1) Before transfer, the sending facility will ensure that all funds and small valuables are properly documented and closed out on Form G-589/I-77 (or local IGSA property receipt form).

2) If the receiving facility does not accept excess, oversized or bulky belongings (including, but not limited to, suitcases, cartons, televisions, etc.), the sending facility will:

   a) Arrange to store the property elsewhere; or

   b) Process the excess property in accordance with the ICE National Detention Standards (NDS) or Performance Based National Detention Standards (PBNDS) related to the destruction of contraband or abandoned property.

3) If the detainee refuses to provide an appropriate mailing address, or is financially able but unwilling to pay for shipping, ERO may dispose of the property after providing

Addendum B 12

13

    the detainee written notice in accordance with the ICE National Detention Standards (NDS) or Performance Based National Detention Standards (PBNDS) related to the destruction of contraband or abandoned property.

**5.14.** **Movements via ICE-Managed Aircraft.** When detainees are being transported by the ERO Flight Operations Unit, ICE will adhere to protocols established for ICE chartered removals

**5.15.** **Post Transfer Activities.**

    1) Detainee Phone Calls.

        a) After admission into the receiving facility the FOD will ensure that all detainees are given the opportunity to make a phone call at the government's expense.

    2) ENFORCE.

        a) The sending field office will ensure that appropriate screens in ENFORCE are complete, updated, and accurate.

        b) Once the detainee reaches his or her destination, the receiving field office will update the appropriate screens in ENFORCE.

**5.16.** **Quality Assurance Review.** Consistent with the terms of this Directive, the FOD shall maintain statistics on transfers and have a quality assurance process in place to monitor all transfer decisions.

**6.** **Authorities/References.**

**6.1.** Immigration and Nationality Act, Pub. L. No. 82-414, §236(a) (1952) (codified as amended at 8 U.S.C. §§ 1101 et seq).

**6.2.** ICE Policy Directive No. 1-32.0, "Alien Registration File (A-File) Creation, Maintenance, Organization, and Disclosure of Information" (Oct. 2, 2009).

14

7.      **Attachments.**

7.1.    Detainee Transfer Notification.

7.2.    Detainee Transfer Checklist.

8.      **No Private Right Statement.**   This Directive is an internal policy statement of ICE.  It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

**John Morton**
**Director**
**U.S. Immigration and Customs Enforcement**